IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION


KEVIN HUGHES                                                                              PETITIONER


v.                                    NO. 2:05CV00327 HDY


LINDA SANDERS, Warden, FCI                                                                RESPONDENT
Forrest City, Arkansas


MEMORANDUM OPINION AND ORDER

BACKGROUND. In September of 2003, petitioner Kevin Hughes ("Hughes") was sentenced to a forty-six month term of imprisonment in the custody of the Federal Bureau of Prisons ("BOP") following his plea of guilty to a drug trafficking offense. He eventually came to be incarcerated at FCI Forrest City in Forrest City, Arkansas.

FEDERAL COURT SUBMISSIONS. In December of 2005, Hughes commenced the proceeding at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2241. He alleged the following in his petition:

> The Unit team at [FCI] Forrest City, Arkansas has informed Petitioner that he is not eligible to spend the last six (6) months of his sentence in a CCC (Halfway House). The BOP is basing its determination on its erroneous and illegal interpretation of 18 U.S.C. 3624(c), the statute that governs the transfer of inmates to CCC's prior to release from imprisonment.

See Document 1, Memorandum at 2. Hughes specifically maintained that the new community corrections center placement policy ("the February 14, 2005, CCC placement policy") is an erroneous interpretation of 18 U.S.C. 3624(c) because the policy is contrary to Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004), and because the policy violates the Ex Post Facto Clause of the United States Constitution. He asked that the policy be invalidated and the BOP be ordered to transfer him to a CCC for the final six months of his sentence.

Respondent Linda Sanders ("Sanders") filed a response to the petition. In the response, she advanced the same positions she advanced in several earlier proceedings, i.e., the BOP has the discretion to designate a prisoner's place of incarceration and the February 14, 2005, CCC placement policy is consistent with, and a permissible interpretation of, the relevant statutes and case law.

EXHAUSTION. Before addressing Hughes' petition, the Court makes note of one preliminary matter. A prisoner is typically required to exhaust his administrative remedies before filing a petition pursuant to 28 U.S.C. 2241. See United States v. Chappel, 208 F.3d 1069 (8th Cir. 2000). The requirement is capable of being waived, though, when a prisoner can show that attempting to exhaust would be futile. The Court finds that requiring Hughes to exhaust in this instance would be futile, primarily because the BOP has taken a clear, consistent, and widespread stand against the positions advanced by Hughes.

BOP POLICY CHANGES AND RESULTING LITIGATION. Turning to address the proceeding at bar, it is best understood when placed in a larger context, a context that involves at least two changes to the BOP's CCC placement policy. Prior to December of 2002, the BOP had a policy of "allowing [a] prisoner[] to serve [the] last six months of incarceration in a CCC regardless of what percent of the sentence this six months comprised." See Elwood v. Jeter, 386 F.3d 842, 844 (8th Cir. 2004). This policy was particularly favorable to a prisoner with a relatively short sentence because it allowed the prisoner to serve a significant portion of his sentence in a CCC.

In December of 2002, the Department of Justice's Office of Legal Council ("OLC") issued a memorandum opinion that provided, in part, the following: "[w]hen [a prisoner] has received a sentence of imprisonment, the [BOP] does not have general authority ... to place such [prisoner] in community confinement at the outset of his sentence or to transfer him from prison to community confinement at any time [the] BOP chooses during the course of his sentence." See Cohn v. Federal Bureau of Prisons, 2004 WL 240570 at 1 (S.D.N.Y. 2004). "[The] OLC [therefore] concluded that [the] BOP could no longer place [a prisoner] in [a CCC] to satisfy a prison term, except that, pursuant to 18 U.S.C. § 3624(c), [the] BOP could do so at the end of [a prisoner's] sentence for the lesser of (i) the last ten percent of the sentence or (ii) six months." See Cato v. Menifee, 2003 WL 22725524 at 1 (S.D.N.Y. 2003). [Emphasis in original]. Shortly thereafter, the BOP announced that it would adhere to the OLC's memorandum opinion.

The United States Court of Appeals for the Eighth Circuit addressed the OLC's memorandum opinion and the BOP's application of the memorandum opinion in <u>Elwood v. Jeter</u>. In that decision, the Court of Appeals determined that the OLC's memorandum opinion was erroneous and that the BOP has the discretion to place a prisoner in a CCC at any time during his incarceration. The Court of Appeals determined that the BOP is not limited by the provisions of 18 U.S.C. 3624(c); instead, that statute imposes a duty on the BOP to take steps to facilitate a prisoner's re-entry into the outside world. That duty, though, was not to extend beyond the last six months of the prisoner's sentence.

In response to <u>Elwood v. Jeter</u>, the BOP adopted a new CCC placement policy on February 14, 2005. The relevant portions of the policy provided as follows:

> 570.20.  What is the purpose of this subpart?
>
> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.
>
> 570.21.  When will the Bureau designate inmates to community confinement?
>
> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

>   (b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority …

The BOP thus acknowledged in the policy that it had the discretion to place a prisoner in a CCC prior to the last ten percent of the sentence being served. The policy reflects, however, that the BOP would exercise its discretion, in advance, by limiting CCC confinement in every instance to the last ten percent of the sentence being served.

The February 14, 2005, CCC placement policy spawned much litigation, including much within this district. In July of 2005, United States District Judge George Howard, Jr., addressed a challenge to the policy in Fults v. Sanders, 2:05CV00091. He found that the policy was invalid because although it purported to be a "categorical exercise of discretion," it was actually not. "It merely repackaged the December 2002 blanket rule that was rejected in Elwood." See Fults v. Sanders, 2:05CV00091, Document 6 at 8.

The undersigned has also had several occasions to address the February 14, 2005, CCC placement policy. The undersigned has followed Judge Howard's lead in every instance and found the policy to be invalid. The undersigned will do likewise in this instance.

CONCLUSION AND REMEDY. Given the foregoing, the Courts finds the February 14, 2005, CCC placement policy to be invalid. Hughes' petition for writ of habeas corpus is therefore granted. Sanders is ordered to: (1) consider, within twenty days and in good faith, transferring Hughes to a CCC for the last six months of his sentence in accordance

with the factors taken into account by the BOP prior to the adoption of the OLC's December of 2002 memorandum opinion; and (2) place Hughes in conditions that will afford him a reasonable opportunity to adjust to, and prepare for, his re-entry into the community during a reasonable part of the last ten percent of his terms, to the extent practicable, not to exceed six months.[1]

DATED this __16__ day of March, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

---

[1] In light of the fact that the petition has been granted, there is no need to address any of Hughes' remaining arguments.